**NAYLOR v. ISTHMIAN S. S. CO.**

Civ. No. 53-341.

United States District Court
S. D. New York.

Aug. 18, 1950.

See also, 10 F.R.D. 128.

Benjamin B. Sterling, New York City, for plaintiff.

Kirlin, Campbell, Hickox & Keating, New York City, for defendant.

GIBSON, District Judge.

The plaintiff brought this case under the Jones Act, 46 U.S.C.A. § 688. James E. Naylor was a seaman who died at sea as a result of injuries received in the course of his employment.

The case was tried by jury and a verdict for the plaintiff in the total amount of $115,000 was rendered on 5 July 1950. The case was submitted to the jury with two counts for damages, one for the pain and suffering of James Naylor, prior to his death; the other for damages caused by the death of James Naylor.

Naylor left a widow, age 35, and two minor children, a daughter, age 15, and a son, age 14.

In submitting the case to the jury, the Court directed the jury to apportion any damages awarded because of the death of Naylor.

The jury considered the case for approximately seven hours, during which time it twice came in for instruction—the second time on the question of damages.

The jury, by its verdict, awarded $40,-000 on Count 1, for pain and suffering. On the other count it awarded $75,000 which it apportioned as follows: $45,000 to the minor son; $15,000 each to the widow and daughter.

After the verdict the defendant moved to set aside the verdict and for a new trial. This motion was denied. However, at the request of the defendant, the Court re-opened this motion for the purpose of hearing arguments on the question of excessiveness. Arguments were heard on 3 August 1950.

James Naylor was injured about 1100 ship time. He died the same day around 2200 ship time. The jury have found the in-

jury was caused by the defendant's negligence and could have found that it was a tremendously painful injury.

The jury that heard the case consisted of high type jurors, eleven men and one woman. Most of the men were businessmen. Jury members asked numerous questions throughout the trial. All of these questions were intelligent and most all were relevant. The charge of the Court as to damages satisfied both parties. The jury was out for about seven hours and on one occasion asked the Court to repeat its charge as to damages.

1. The jury has a peculiar and exclusive province to assess damages in a case such as this. In this type of case, to justify the granting of a new trial on the ground of excessiveness, the damages must be "flagrantly outrageous and extravagant, evincing intemperance, passion, partiality, or corruption on the part of the jury." So says Spencer, J. in M'Connell v. Hampton, 12 Johns. 236. Brown v. Evans, C.C., 17 F. 912, 917.

Another statement of this rule is that the damages must be so excessive "that all mankind would be struck at first blush with the enormity of the sum." Shute v. Barrett, 7 Pick.,Mass., 82, 87.

This then is the standard. I can find neither intemperance, passion, partiality, nor corruption on the part of the jury. It worked earnestly and intently on the case. It had the right to consider the present purchasing power of the dollar. It had no yardstick save its own collective conscience.

This is a Court created by a free people for the equal protection of all. It is in truth the people's court. The jury are the country. It is not a Court set up under a tyrant or a dictator; a Court slyly designated as a "People's Court". It is not a Court whose judges will lose their heads if a case is not decided as the tyrant wills. It is a Court that is neither subservient to the state nor to the individual or corporation. It is a Court dedicated to preserve the freedom of the individual; dedicated to pass on the right or wrong of contentions between individuals.

The pain inflicted on an individual which is caused by the wrongdoing of another is no less to a poor man than to a millionaire. It is most difficult to assess. In the absence of intemperance, passion, partiality or corruption—and there is none evident in this case—I am not one to say that terrific pain inflicted on a seaman for ten hours is not worth $40,000— when a jury of free men and women calmly, carefully and deliberately so decide.

2. The defendant also claims that the award of damages for wrongful death was excessive. The elements of damage the jury might consider on this count were Naylor's annual earning power, his chance for increased earnings in the future, and, of course, nurture for the children.

The jury, viewing the evidence in the light most favorable to the plaintiff, could find that Naylor earned about $2600 a year for the years preceding his death; that he was ambitious to improve his status and increase his annual earnings; that he was in fact taking steps towards becoming a licensed officer. He had a life expectancy of 31 years. It also could consider the value of the nurture a father can give to a minor son and daughter, even though he was a seaman and would of necessity be away a large part of the time from his family.

The jury could also find that the minor son, age 14 at the time of his father's death, was sickly; would require expensive medical and mental treatment for the rest of his life, and would be unable to support himself throughout his life.

Taking everything into consideration, I cannot rule as a matter of law that the jury's award for the wrongful death of Naylor was excessive.

This Court denies the motion to set aside the verdict on the grounds of excessiveness.